1   ANNETTE D. KIRKHAM, State Bar No. 217958
    annettek@lawfoundation.org
2   KIM PEDERSON, State Bar No. 234785
    kimp@lawfoundation.org
3   FAIR HOUSING LAW PROJECT
    LAW FOUNDATION OF SILICON VALLEY
4   111 West Saint John Street, #315
    San Jose, CA 95113
5   Telephone:    (408) 293-4790
    Facsimile:    (408) 293-0106
6

7   Attorneys for Plaintiff
    BERNARDO REYES
8

9

10

11                      UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

                                              C08  04606
14
    BERNARDO REYES                            COMPLAINT FOR VIOLATIONS OF
15                                            THE TRUTH IN LENDING ACT;
                Plaintiff,                    REAL ESTATE SETTLEMENT
16                                            PROCEDURES ACT; CALIFORNIA
          v.                                  BUSINESS & PROFESSIONS CODE
17                                            § 17200 ET SEQ.; CALIFORNIA
    PREMIER HOME FUNDING, INC., a             CIVIL CODE § 1632; AND FOR
18  California corporation, WORLD SAVINGS     INTENTIONAL
    BANK, FSB, WACHOVIA BANK, N.A.,           MISREPRESENTATION;
19  and JOEL MADERA CANDELARIO                NEGLIGENCE; UNJUST
                                              ENRICHMENT& RESCISSION
20              Defendants.
                                              DEMAND FOR JURY TRIAL
21

22

23

24

25

26

27

28

Plaintiff Bernardo Reyes (hereinafter "Plaintiff" or "Mr. Reyes") alleges as follows:

**THE PARTIES**

1.  Mr. Reyes is an individual who currently resides in San Jose, County of Santa Clara, California.

2.  Defendant Premier Home Funding, Inc. (hereinafter "Premier") is a corporation organized and existing under the laws of the State of California.  On information and belief, Premier' principal place of business is in the State of California, located at 2392 Mill Creek Drive, Laguna, Hills, California 92653.

3.  On information and belief, Defendant Joel Madera Candelario ("Candelario") is an individual residing in the State of California and an individual residing in the State of California and a representative of Defendant Premier.  On information and belief, Candelario was not licensed as a real estate broke or salesperson by the California Department of Real Estate during the period of this Complaint.

4.  Defendant World Savings Bank, FSB (hereinafter "World Savings Bank") is a corporation organized and existing under the laws of the State of California.  On information and belief, World Savings Bank regularly does business in Santa Clara County, and its principal place of business is 1901 Harrison Street, in Oakland, California. On information and belief, Defendant World Savings Bank was engaged in business as a creditor who regularly engaged in the making of mortgage loans, payable by agreement in installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.

5.  Defendant Wachovia Bank, N.A. (hereinafter, "Wachovia") is a corporation organized and existing under the laws of the State of North Carolina and doing business in the State of California.  Wachovia is the current holder of the refinance loan at issue in this Complaint.

6.  On information and belief, at all times relevant herein, each of the Defendants was the agent, servant and/or employee of each other defendant.  On information and belief, each Defendant was acting within the course and scope of such agency or employment in doing the

1    things alleged.

## JURISDICTION

2

3    7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because

4    Plaintiff has alleged causes of action for violations of the Federal Truth in Lending Act, pursuant

5    to 15 U.S.C. § 1601 *et seq.* and the Federal Real Estate Settlement Procedures Act, 12 U.S.C. §

6    2601 *et seq.*

7    8.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and

8    determine Plaintiff's state law claims because those claims are related to Plaintiff's federal

9    claims, arise out of a common nucleus of operative facts and form part of the same case or

10   controversy under Article III of the United States Constitution.

## VENUE

11

12   9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because the

13   Defendants committed each of the wrongful acts alleged herein within this judicial district and

14   reside in this judicial district.

## INTRA-DISTRICT ASSIGNMENT

15

16   10.    Intra-district assignment in San Jose, California is proper because the unlawful

17   conduct that gives rise to the alleged claims occurred in Santa Clara County.

## STATEMENT OF THE CASE

18

19   11.    Defendants have acted in concert to defraud Mr. Reyes, a forty-four year-old

20   Spanish speaking man of Mexican heritage, of his greatest single asset – his home. Defendants,

21   acting through Defendant Candelario, executed a classic "bait and switch" routine by promising

22   one thing during their discussions, which occurred in Spanish, then taking advantage of his

23   limited ability to read and write English and having him sign documents written in English that

24   did not reflect the terms and conditions promised by Defendants. Defendant Candelario,

25   representing himself to be Mr. Reyes' mortgage broker and agent, manipulated Mr. Reyes' trust

26   by pressuring him to enter a transaction arranged by the Defendants. The true terms of this

27   transaction were misrepresented to Mr. Reyes prior to closing. Defendants' transaction was not a

28   fair bargained-for deal, but a ruse designed to deprive Mr. Reyes of his family home.

12. In fact, Mr. Reyes had been promised that he would receive a loan with a fixed interest rate and monthly charge of no more than $1,530, interest and principal included, for the first five years; that there would be no prepayment penalty, that he would receive $30,000 cash out from the loan, and that broker's fees would not exceed $4,000, and no prepayment penalty. Instead, Mr. Reyes received a negatively amortizing Pick-A-Payment loan, with a fixed interest rate for only *one* year well in excess of the agreed upon rate, and that provided for only $17,602.51 cash out, over $14,000 in broker's fees, and a three-year prepayment penalty clause.

13. Further, on the night Mr. Reyes signed the closing documents of the aforementioned transaction, Defendants provided *no copies* of *any* of the loan documents, including the document notifying Mr. Reyes of his right to rescind. Mr. Reyes was provided with a copy of his Notice of Right to Cancel, and other loan documents, weeks after the loan closed. He then attempted to rescind but was told that it was "too late."

14. To make matters worse, Mr. Reyes received no Good Faith Estimate prior to the closing, and the Good Faith Estimate that Mr. Reyes did receive at the closing failed to disclose any of the brokers' fees that he would be responsible for paying, and did not disclose that defendant Premier would receive double compensation in the form of a Yield Spread Premium paid by World Savings. .

15. Mr. Reyes is now forced to file the instant action to avoid losing his home and recover damages caused by the fraudulent conduct and statutory violations engaged in by Defendants.

## STATEMENT OF FACTS

16. Mr. Reyes is a forty-four year-old man who resides at a home located at 14030 Aldo Court, San Jose, California, together with his wife, Olga Salazar ("Ms. Salazar"), and their three children. Mr. Reyes purchased his home in February of 2000.

17. Mr. Reyes was born and raised in Mexico, where he received an education through the third grade. He is a monolingual Spanish-speaker who reads and writes almost no English.

18. In or around late August of 2007, Mr. Reyes received a letter from Defendant Premier urging him to refinance at a new low interest rate because his current monthly mortgage

1   payment was about to increase. Because the interest rate on Mr. Reyes' existing loan was

2   scheduled to increase in early November, and because the letter indicated that Mr. Reyes was

3   eligible for a monthly payment as low as $1,200, Mr. Reyes and his wife, Ms. Salazar, decided to

4   call Premier to discuss the possibility of refinancing.

5        19.    Defendant Candelario answered the telephone in Spanish, and addressed this and

6   all future communications to Mr. Reyes and Ms. Salazar regarding the refinance loan exclusively

7   in Spanish.

8        20.    During the initial discussion with defendant Candelario, Ms. Salazar explained that

9   she had received the letter, that the introductory interest rate on their current loan was about to

10  expire, and that they wanted to see if they could refinance to get a lower monthly payment, as

11  described in the letter. Mr. Reyes' existing loan on the property totaled approximately $339,000,

12  and had a monthly payment of approximately $1,550, with principal and interest included.

13       21.    Defendant Candelario responded by saying not only could he would lower the

14  monthly payment, but he could also get Mr. Reyes $30,000 cash out of the house. Candelario

15  also explained that because he was a direct representative of World Savings Bank, he would be

16  able to procure an affordable loan for Mr. Reyes, and fees would be limited to $4,000.   Further,

17  Candelario promised that the loan would have a fixed interest rate for the first five years and no

18  prepayment penalty. That statement was false and intended to mislead Mr. Reyes into entering

19  into a ruinous loan with hidden costs he could not possibly afford.

20       22.    Defendant Candelario then requested Mr. Reyes' full name, Social Security

21  Number, and monthly income and said he would get back to them soon.

22       23.    Within a week's time, Candelario called back and spoke with Ms. Salazar.

23  Candelario said that he could procure a refinance loan for Mr. Reyes with a fixed payment of less

24  that $1,530 per month for a period of five years, principal and interest included, that there would

25  be no prepayment penalty, that Mr. Reyes would receive $30,000 cash out from the loan, and that

26  fees would be limited to $4,000. Candelario also requested that Mr. Reyes mail copies of his pay

27  stubs to verify his employment and income. Ms. Salazar said that she would relay the offer to

28  Mr. Reyes.

24.     That evening, Ms. Salazar conveyed the proposed terms of the refinance loan to Mr. Reyes. Relying on Defendant Candelario's representations regarding the terms of the proposed refinancing deal, Mr. Reyes decided to go ahead and refinance his home through Defendants.

25.     Mr. Reyes then faxed copies of his salary check stubs to Candelario as requested. Unbeknownst to Mr. Reyes at the time, even though Defendants were fully informed about Mr. Reyes' employment and salary, Defendants falsely inflated his income on the loan application form, representing that he earned the sum of $8,120 per month from employment as a manager of a steel services center. In fact, Mr. Reyes was employed by a sheet metal company, but only earned approximately $2,200 per month. Defendants intentionally misrepresented Mr. Reyes' income in order to procure for him a refinance loan that he could not possibly afford, thereby increasing Defendants' profits through inflated fees and payments.

26.     When Ms. Salazar called Candelario back, Candelario answered the telephone by saying, "World Savings Bank, can I help you?" Ms. Salazar then told Candelario that Mr. Reyes wanted to go ahead with the loan. Candelario said that he would prepare the papers and get back to them soon.

27.     Over the course of the next three or four weeks, Defendant Candelario did not provide Mr. Reyes with any Good Faith Estimate, or other loan documents. Instead, he called up to twice a day and left messages stating that "everything was going to work out well." Meanwhile, the expiration of the low introductory rate on Mr. Reyes' current loan was approaching.

28.     During the month of September, when Ms. Salazar called Candelario to inquire about the progress of the loan, Candelario answered the phone by saying, "World Savings Bank, can I help you?" Candelario then assured Ms. Salazar that the papers were being processed, that Mr. Reyes would be able to lower his monthly payments, and that there was nothing to worry about.

29.     On the afternoon of October 5, 2007, Candelario called the Reyes-Salazar home to let them know that the loan documents were finally ready to be signed. Candelario told them that

- 5 -

1   a person named Rafael Montejano ("Montejano") would bring over the documents for closing at

2   about 7:00 PM.

3        30.    Montejano arrived at the Reyes-Salazar home at about 9:30 PM and informed Mr.

4   Reyes that his wife was waiting for him outside in the car.  Montejano explained that he was a

5   Notary Public.  On information and belief, that was a misrepresentation, as the Notary stamp that

6   Montejano used on the loan documents reads "G.M. Candelario," not "Rafael Montejano."

7        31.    Although the loan had been negotiated exclusively in Spanish, the loan documents

8   were written in English, and no written translation was provided.  Prior to the closing, Mr. Reyes

9   did not receive any documents related to the refinance loan.

10        32.    Montejano summarized the documents in Spanish.  As the terms appeared to be

11   consistent with what had been promised by Candelario, Mr. Reyes signed the English-language

12   documents presented to him by Montejano.

13        33.    Unbeknownst to Mr. Reyes at the time, the actual terms in the loan documents that

14   he signed were different than the terms promised to him by Candelario.  Instead of a fixed interest

15   rate with a monthly payment of less than $1,530, principal and interest included, the loan

16   documents Mr. Reyes provided for Defendant World Savings Bank's negatively amortizing

17   "Pick-a-Payment" Note, with a fixed interest rate of 8.25% for a period of only *one* year.  The

18   loan provided a choice of four monthly payment options: $1,530.91, $2,578.13, $2,817.33 or

19   $3,637.99.  Because of the interest rate, the $1,530.91 option does not even satisfy the accrued

20   monthly interest on the loan, so the principal actually increases with every payment.  Contrary to

21   promises made by Candelario, this low payment does not include principal and interest.  The

22   principal amount of the loan was $375,000.

23        34.    Additionally, in contradiction to the promise made by Candelario, the loan

24   contained a three-year prepayment penalty clause.

25        35.    Also, unbeknownst to Mr. Reyes, the loan documents provided for broker's fees to

26   defendant Premier totaling $14,912.50, not $4,000 as promised.  Of the total broker fees paid to

27   defendant Premier, $7,412.50 were paid directly through Mr. Reyes's loan transaction.  In

28   addition, defendant World Savings paid defendant Premier a Yield Spread Premium of $7,500.

COMPLAINT FOR DAMAGES
REYES V. PREMIER HOME FUNDING, ET AL.

1    Together, these fees earned by defendant Premier total approximately 3.97% of the total mortgage

2    amount.

3         36.    Finally, the loan only provided for a total of $17,602.51 cash out, instead of the

4    promised $30,000.

5         37.    Mr. Reyes was not aware of these substantial changes to the terms of the loan at

6    the closing. Because Montejano took all of the signed loan documents away with him when he

7    left the Reyes-Salazar home without leaving copies, Mr. Reyes never had an opportunity to

8    review the terms of the loan after the closing. Instead, Montejano told Mr. Reyes that he would

9    send copies of the documents in three days' time. But the documents never arrived.

10        38.    On October 11, 2007, Ms. Salazar received a call from Defendant Candelario. He

11   told her that there were some papers that needed to be signed immediately, or the loan would not

12   go through. Candelario then arranged that he would send Ms. Salazar the documents via Western

13   Union, and the she should sign and return them by fax.

14        39.    Ms. Salazar followed Candelario's instructions, going to Western Union and

15   signing the English-language documents, even though she is not a signatory on the Note. She

16   then immediately faxed the documents back to Candelario. Weeks later, when Mr. Reyes finally

17   received copies of these documents, he learned that the documents signed by his wife at

18   Candelario's direction were actually two disclosures required by the Truth in Lending Act: the

19   Notice of Right to Cancel and the Truth In Lending Disclosure for the refinance loan. A true and

20   correct copy of the Notice of Right to Cancel with the fax line dated Oct 11, 2007, is attached as

21   Exhibit A to this Complaint. Mr. Reyes was not provided with a copy of his Notice of Right to

22   Cancel at the time that he signed the loan paperwork on October 5, 2007. Additionally, the

23   Notice of Right to Cancel erroneously signed and returned by Ms. Salazar, who was not a

24   signatory on the loan, at the request of Candelario on October 11, 2007, was provided outside of

25   the three-day window in which Mr. Reyes could have exercised his right to cancel the loan.

26        40.    According to the HUD-1 Final Settlement Statement, the loan settlement occurred

27   on October 15, 2007.

28        41.    About a month after the closing, Mr. Reyes received his first mortgage statement.

1   Mr. Reyes was shocked and confused by the statement, which reflected the terms of World

2   Savings Bank's Pick-a-Payment loan, of which he had previously been unaware.

3       42.     Concerned, Ms. Salazar called World Savings Bank. She explained that there

4   must have been some mistake because Mr. Reyes was supposed to receive a loan with a fixed

5   monthly payment of no more than $1,530, principal and interest included, for the first five years

6   and a cash-out payment in the amount of $30,000. The World Savings representative told Ms.

7   Salazar that everything was signed and there was nothing World Savings could do to fix the loan.

8       43.     Still believing there must have been a mistake, Ms. Salazar then called Candelario.

9   Candelario assured her that the title company must have made a mistake and that everything

10  would be fixed in three days time. But, three days passed and Ms. Salazar heard nothing from

11  Candelario.

12      44.     After that, Mr. Reyes and Ms. Salazar attempted to reach Candelario by calling

13  him, sometimes multiple times a day, but he never picked up the phone or returned their calls.

14      45.     In early November 2007, Mr. Reyes finally received, from the title company,

15  copies of the documents that he signed at closing on October 5, 2007. This package of documents

16  contained two different Truth in Lending Act disclosures -- both signed and dated by Mr. Reyes

17  on October 5, 2007 - reflecting dramatically different loan terms.

18      46.     The first Truth in Lending disclosure states that it was prepared by Premier Group

19  Lending, Inc. on September 13, 2007. It shows an Annual Percentage Rate of 2.75%, a Finance

20  Charge of $171,429, an Amount Financed of $365,000 and a Total of Payments of $536,429. In

21  addition, it reflects relatively stable payments over the 360 months of the loan, with 359 payments

22  of $1,490.08 and one final payment of $1,490.28.

23      47.     The second Truth in Lending disclosure statement provided to Mr. Reyes for

24  signature contains wildly different loan terms than the first. This document appears to have been

25  prepared on October 5, 2007 and bears the name "World Savings" across the top of the page. It

26  discloses an Annual Percentage Rate of 8.459%, a Finance Charge of $850,383.36, an Amount

27  Financed of $364,220.54 and a Total of Payments of $1,214,603.90. In addition, it reflects

28  monthly payments that steadily increase from $1,530.91 to $2,935.14 over the first nine-and-a-

1    half years of the loan, and then leveling off at $3,948.41 for the remainder of the 30-year term.

2        48.    The Truth in Lending Statement that Candelario requested Ms. Salazar to sign and

3    return to him is identical to the second Truth in Lending disclosure statement signed by Mr.

4    Reyes.

5        49.    The second Truth in Lending Statement appears to accurately reflect the terms of

6    the loan provided to Mr. Reyes.  No one explained to Mr. Reyes why he was required to sign two

7    significantly different Truth in Lending disclosures on the date of his closing.

8        50.    Acting as an agent for defendant Premier, defendant Candelario's

9    misrepresentations about the loan caused Mr. Reyes to sign all of the documents, despite the fact

10   that he was unable to read them, and without having them adequately explained to him.  These

11   misrepresentations and Mr. Reyes's subsequent signing of the documents caused a mortgage

12   secured by a Deed of Trust with Defendant World Savings Bank to be recorded against the

13   Reyes-Salazar home.

14       51.    At the time of execution of the mortgage documents, Mr. Reyes was ignorant of

15   the falsity of defendants Candelario's and Premier's representations and believed them to be true.

16   In reliance on these false representations, Mr. Reyes was induced to sign all the closing

17   documents, including a Deed of Trust and Defendant World Savings Bank's negatively

18   amortizing Pick-a-Payment loan in the amount of $375,000.

19       52.    Had the Mr. Reyes known of the actual terms of the loan that he eventually

20   received, he would not have signed the documents.

21       53.    Defendant Premier purposefully defrauded Mr. Reyes and structured the loan with

22   monthly payments that its agent, Candelario, knew he could not afford in order to increase its fees

23   and payments.  On information and belief, Defendants Premier and Candelario intended for Mr.

24   Reyes to fall behind on his payments, at the risk of default, so he would return to either refinance

25   the loan again, resulting in more origination fees for the Defendants as well as payment of the

26   prepayment penalty to Defendants, or to default, leading to foreclosure.

27       54.    As a direct result of this refinance transaction orchestrated by Defendant Premier

28   and funded by defendants World Savings and Wachovia, Mr. Reyes now faces possible

1    foreclosure of and removal from his family home.

2        55.    Mr. Reyes is informed and believes and thereon alleges that throughout all relevant

3    times in this complaint, defendant Candelario, who made the misrepresentations herein alleged,

4    was the agent and employee of defendants Premier, as well as World Savings Bank and, in doing

5    the things herein alleged was acting within the course and scope of such agency and employment

6    and with their permission and consent.

7        56.    Moreover, Mr. Reyes is informed and believes and thereon alleges that the

8    Defendant World Savings Bank conspired with defendant Premier to make such

9    misrepresentations in order to induce Mr. Reyes to enter into the ruinous transaction.

10       57.    On information and belief, defendants Premier and World Savings knowingly and

11   purposely conspired to defraud Mr. Reyes to enter this transaction.  Defendants Premier and

12   World Savings knew that Mr. Reyes was susceptible to this type of transaction.  They acted with

13   recklessness, bad faith, oppression, fraud, or malice in committing the aforementioned acts of

14   financial abuse in that they knew or should have known that Mr. Reyes was unaware that the deal

15   he entered satisfied none of his objectives.

16                          **FIRST CAUSE OF ACTION**
                    **Violations of the Federal Truth In Lending Act;**
17   **Federal Home Ownership & Equity Protections, Act, 15 U.S.C. § 1601. *et seq.***
                    **(Against Defendants World Savings and Wachovia)**
18

19       58.    Mr. Reyes hereby realleges and incorporates by reference the allegations of

20   paragraphs 1 through 57 as though fully set forth herein.

21       59.    At the time of subject transaction, one or more of the Defendants acted as creditors

22   who regularly engaged in the making of mortgage loans, payable by agreement in installments or

23   for which the payment of a finance charge is or may be required, whether in connection with

24   loans, sales of property or services, or otherwise.

25       60.    Accordingly, Defendants are subject to the Truth in Lending Act ("TILA") 15

26   U.S.C. § 1601 *et seq.*, and its implementing regulations, Federal Reserve Board Regulation Z, 12

27   C.F.R. § 226.

28       61.    As a result of the subject transaction, Defendants acquired an interest in Mr.

1    Reyes' home that secures the payment or performance of an obligation.

2       62.    Defendants provided Mr. Reyes with *no* copy of the Notice of Right to Cancel as

3    required by the Federal Truth in Lending Act.

4       63.    As a result, the Defendants failed to properly and accurately notify Plaintiff of his

5    right to rescind the transaction, in violation of 15 U.S.C. § 1635(a) and 12 C.F.R. §§ 226.15(b)

6    and 226.23(b).

7       64.    The Defendants failed to disclose *any* of the information required by the TILA and

8    Regulation Z through furnishing two completely inconsistent Truth in Lending Statements with

9    contradictory terms, neither of which reflected the true nature of the deal.  Specifically,

10    Defendants have violated at least the following statutory disclosure requirements:

11         a.    By failing to disclose properly and accurately the amount financed, in

12         violation of 15 U.S.C. § 1638(a)(2)(A) and 12 C.F.R. § 226.18(b);

13         b.    By failing to disclose properly and accurately the "annual percentage rate" in

14         violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e);

15         c.    By failing to disclose properly and accurately the finance charge fees payable

16         to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. §

17         1638(a)(3) and 12 C.F.R. § 226.18(d) & § 226.4;

18         d.    By failing to disclose properly and accurately the "total of payments" in

19         violation of 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(b);

20         e.    By failing to disclosure properly and accurately the number, amount, and due

21         dates or period of payments scheduled to repay the obligation in violation of 15 U.S.C. §

22         1638(a)(6) and 12 C.F.R. § 226.18(g);

23         f.    By failing to disclose any dollar change or percentage amount which may be

24         imposed by a creditor solely on account of a late payment, other than a deferral or extension

25         charge in violation of 15 U.S.C. § 1638(a)(10).

26       65.    In accordance with the Federal Truth in Lending Act, Plaintiff is entitled to:

27         a.    Rescission of the loan held by Defendants pursuant to U.S.C. §§ 1635,

28         1641(d)(1) and 12 C.F.R. § 226.23;

b.     The return of any money or property that has been given to anyone in

connection with the transaction and the termination of Defendants' security interest in the

property;

c.     Actual damages in an amount to be determined at trial, as provided by 15

U.S.C. § 1640(a)(1);

d.     Statutory damages as provided by 15 U.S.C. § 1640(a)(2); and

e.     Attorneys' fees and costs as provided by 15 U.S.C. § 1640(a)(3).

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION
**(Violations of the Federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*
(Against Defendants Premier, Candelario and World Savings)**

66.     Mr. Reyes hereby realleges and incorporates by reference the allegations of

paragraphs 1 through 65 as though fully set forth herein.

67.     At the time of the subject transaction, Defendant World Savings acted as a creditor

that regularly engaged in the making of mortgage loans, payable by agreement in installments or

for which the payment of a finance charge is or may be required, whether in connection with

loans, sales of property or services, or otherwise.

68.     On information and belief, Defendant World Savings made or invested in

residential real estate loans aggregating more than $1,000,000 per year.

69.     Accordingly, this transaction was subject to the Real Estate Settlement Procedures

Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*

70.     Defendants have violated RESPA by:

a.     Assessing fees and kickbacks pursuant to an agreement or understanding,

oral or otherwise, that business incident to or part of a real estate settlement service involving the

mortgage on Mr. Reyes's home should be referred to any person, in violation of 12 U.S.C. §

2607(a);

b.     Accepting any portion, split or percentage of any charge made or received

for the rendering of a real estate settlement service in connection with a transaction involving the

mortgage on Mr. Reyes's home other than for services actually performed in violation of 12

1    U.S.C. § 2607(b).

2        71.    In accordance with RESPA, Mr. Reyes is entitled to:

3            a.    Statutory damages equaling three times the amount paid for settlement

4    services, in accordance with 12 U.S.C. § 2607(d); and

5            b.    Attorneys' fees and costs in accordance with 12 U.S.C. § 2607(d).

6
7                        **THIRD CAUSE OF ACTION**
                    **Violation of California Civil Code § 1632**
8                          **(Against All Defendants)**

9        72.    Mr. Reyes hereby realleges and incorporates by reference the allegations of

10   paragraphs 1 through 71 as though fully set forth herein.

11       73.    Defendants failed to provide any disclosures in Spanish, despite the fact that the

12   loans were negotiated in Spanish, in violation of Civil Code § 1632(c).

13       74.    Pursuant to subdivision (k) of California Civil Code § 1632, Defendants must

14   allow Mr. Reyes to rescind the loan.

15       75.    Pursuant to California Civil Code § 1691(b), this Complaint serves as notice of

16   rescission.

17       76.    Mr. Reyes is entitled to rescind the loan and equitable restitution.

18       WHEREFORE, Plaintiff prays for relief as set forth below.

19                        **FOURTH CAUSE OF ACTION**
                                    **Fraud**
20              **(Against Defendants Premier and Candelario)**

21       77.    Mr. Reyes hereby realleges and incorporates by reference the allegations of

22   paragraphs 1 through 76 as though fully set forth herein.

23       78.    Defendants Candelario and Premier fraudulently and knowingly induced Mr.

24   Reyes to enter into the October 5, 2007 mortgage transaction by making intentional

25   misrepresentations, failing to provide material information and/or deliberately concealing

26   material information. As more fully alleged above, Defendant Candelario, for his own benefit on

27   behalf of Defendant Premier, knowingly and purposely deceived Mr. Reyes and induced him to

28   enter into a ruinous transaction that he knew Mr. Reyes could not repay.

1       79.    Further, Defendants Premier and Candelario made numerous misrepresentations to

2  induce Mr. Reyes to enter this transaction, including the assurance that Mr. Reyes would be

3  getting an additional $30,000 out of the property; that the payments would be under $1,530 per

4  month for the first five years, principal and interest included; that Mr. Reyes would be charged a

5  broker's fee of no more than $4,000 because Defendant Candelario was a representative of

6  Defendant World Savings; and that there would not be a prepayment penalty. Moreover, after

7  requesting and receiving truthful information about Mr. Reyes' income, Defendants Premier and

8  Candelario misrepresented his income on the loan application in order to inflate their hidden

9  broker's fees and to procure a refinance loan that Mr. Reyes could not possibly afford.

10      80.    Mr. Reyes has incurred and continues to incur substantial damages as a direct and

11  proximate result of his justifiable reliance into entering into a transaction with Defendants based

12  on Defendants' intentional misrepresentations, omissions and/or concealments.

13      81.    Defendants' actions were willful, intentional, and knowing, rendering the October

14  5, 2007 mortgage and deed of trust null and void.

15      WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**Violation of California Business and Professions Code § 17200 *et seq.***
**(Against All Defendants)**

18      82.    Mr. Reyes hereby realleges and incorporates by reference the allegations of

19  paragraphs 1 through 81 as though fully set forth herein.

20      83.    Plaintiffs are informed and believe, and on that basis allege, that Defendants, and

21  each of them, engaged in numerous acts and/or practices of unfair competition within the state of

22  California in violation of Business and Professions Code section 17200 et seq. These acts or

23  practices include without limitation the following:

24        a.    Offering and making Plaintiff loans, while failing to take into account their

25  ability to repay such loans;

26        b.    Misrepresenting to Plaintiff the terms on which Defendants were willing to

27  enter into refinancing or other loan transactions with them;

28        c.    Failing to provide required notices and copies of loan documents;

1    d.  Falsifying information in loan applications of Plaintiff, without their

2 knowledge or consent; and

3    84.  Violating the Truth in Lending Act, 15 U.S.C. § 1601 et seq; the Federal Real

4 Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, California Civil Code section 1632 et

5 seq.; or any other applicable statute.

6    85.  The above-described unlawful, unfair and fraudulent business practices present an

7 ongoing threat of injury to Plaintiff, and the general public. Plaintiff and the general public

8 continue to be financially harmed by such conduct and, unless it is restrained, Defendants, and

9 each of them, will continue to engage in such conduct.

10    86.  Pursuant to California Business and Professions Code section 17203, Plaintiff is

11 entitled to an order of this Court enjoining Defendants, and each of them, from continuing to

12 engage in unfair competition as defined in Business and Professions Code section 17200 in the

13 State of California and similar statutes of sister-states. Plaintiff and the general public will be

14 irreparably harmed if such an order is not granted.

15    87.  Plaintiff has been injured by Defendants' conduct and is entitled to restitution and

16 disgorgement of profits realized by Defendants, and each of them, as a result of their unfair

17 competition as defined in Business and Professions Code section 17200 et seq.

18    WHEREFORE, Plaintiff prays for relief as set forth below.

19          **SIXTH CAUSE OF ACTION**
             **Negligence**
20        **(Against All Defendants)**

21    88.  Mr. Reyes hereby realleges and incorporates by reference the allegations of

22 paragraphs 1 through 87 as though fully set forth herein.

23    89.  Defendants owed a duty of care to Mr. Reyes to exercise reasonable

24 care with respect to the solicitation, negotiation, processing and finalization of the refinance

25 loan agreement.  Defendants Premier and Candelario further owed a special duty of care as

26 specialists with respect to mortgage brokering services.  Defendants breached their duties of

27 care to Mr. Reyes and failed to exercise reasonable care and skill in performing their mortgage

28 brokering and lending services by, among other things: failing to explain the material terms of

- 15 -

1  the refinance transaction and loan agreement, failing to ensure that Mr. Reyes understood the

2  material terms of the transaction and loan agreement, failing to provide a translation of the

3  loan documents in Spanish; failing to submit truthful financial information, evaluate and

4  confirm the accuracy of such financial information; and by failing to provide Mr. Reyes with

5  copies of the Right to Cancel Notice.

6       90.    As a proximate result of Defendants' negligence and other breaches of fiduciary

7  duty as alleged herein, Mr. Reyes entered into a loan he could not afford on undisclosed terms

8  and has suffered and will continue to suffer damages in an amount to be proven at trial.

9       WHEREFORE, Plaintiff prays for relief as set forth below.

10                    **SEVENTH CAUSE OF ACTION**
                          **Unjust Enrichment**
11                       **(Against All Defendants)**

12      91.    Mr. Reyes hereby realleges and incorporates by reference the allegations of

13  paragraphs 1 through 90 as though fully set forth herein.

14      92.    By their wrongful acts and omissions, Defendants were unjustly enriched at the

15  expense of Plaintiff.

16      93.    Plaintiff is entitled to restitution from Defendants and disgorgement of all profits,

17  benefits and other compensation obtained by Defendants through their wrongful conduct.

18      WHEREFORE, Plaintiff prays for relief as set forth below.

19                         **PRAYER FOR RELIEF:**

20      1.     Cancellation of the Deed of Trust and any and all mortgage documents dated

21  October 5, 2007;

22      2.     Rescission of the Deed of Trust and any and all mortgage documents dated

23  October 5, 2007 and any and all agreements or contracts that made up the fraudulent transaction

24  at issue;

25      3.     An accounting, restitution and/or disgorgement;

26      4.     Compensatory and general damages;

27      5.     Special damages;

28

COMPLAINT FOR DAMAGES
REYES V. PREMIER HOME FUNDING, ET AL.

6.      Punitive and exemplary damages according to proof;

7.      Statutory damages pursuant to the Truth in Lending Act and Real Estate Settlement Procedures Act;

8.      Costs and reasonable attorneys' fees;

9.      Prejudgment interest;

10.     Injunctive relief;

11.     Such other and further relief as the Court deems proper.

Dated: October 3,  2008

FAIR HOUSING LAW PROJECT
LAW FOUNDATION OF SILICON VALLEY

Kim Pederson
Attorneys for Plaintiff
BERNARDO REYES

1
2

## JURY DEMAND

3        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury

4    as to each and every claim for which he is so entitled.

5

6        Dated: October 3, 2008              FAIR HOUSING LAW PROJECT

7                                            LAW FOUNDATION OF SILICON VALLEY

8

9                                            Kim Pederson

10                                           Attorneys for Plaintiff
                                             BERNARDO REYES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

Oct 11 07 01:30p    Fax Cash #12                    408 92_ 8578              p.1

*Att.*
*Joe candel.*

| WORLD SAVINGS | NOTICE OF RIGHT TO CANCEL - GENERAL |
|---|---|
| | (LENDER CURRENTLY DOES NOT HAVE A LOAN ON THE PROPERTY) |

**A. YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is October 5, 2007; or

(2) the date you received your new Truth-in-Lending disclosures; or

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

Any owner of your home has the right to cancel this transaction. If one owner cancels the transaction, cancellation is effective for all owners.

**B. HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing at: WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: OPERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 696-1292, (the other office of representative of World Savings is authorized to accept your written notice to cancel.)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram for free, you must send the notice to the above location no later than midnight of the third business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**C. CANCELLING THE TRANSACTION**

I WISH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)

Consumer's Signature _____     Date _____

Please advise the Closing Agent if you decide to cancel.

**ACKNOWLEDGEMENT OF RECEIPT OF COPIES**

BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (here and to sign and return to World).

Consumer's Signature _____     Date  10/5/7

*Olga Morales.*

Property Address:   14030 ____ CT
                    ___ JOSE, CA  95127-____

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

DISTRIBUTION:    1 COPY RETURN SIGNED TO LENDER    2 COPIES BORROWER    1 COPY FILE    CA    LENDER'S USE ONLY

0 2 4