1  ANNETTE D. KIRKHAM, (SBN 217958)
   annettek@lawfoundation.org
2  KIM PEDERSON, (SBN 234785)
   kimp@lawfoundation.org
3  LAW FOUNDATION OF SILICON VALLEY
   FAIR HOUSING LAW PROJECT
4  152 North Third Street, 3rd Floor
   San Jose, CA 95112
5  Telephone:    (408) 280-2410
   Facsimile:     (408) 293-0106
6
   Attorneys for Plaintiff BERNARDO REYES
7

8

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

| 14  BERNARDO REYES, | Case No.  C08-04606 JW |
|---|---|
| 15           Plaintiff, | **PLAINTIFF BERNARDO REYES'S OPPOSITION TO DEFENDANT** |
| 16       v. | **WACHOVIA MORTGAGE, FSB'S MOTION FOR SUMMARY** |
| 17  PREMIER HOME FUNDING, INC., a | **JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| 18  California corporation, WORLD SAVINGS BANK, FSB, WACHOVIA BANK, N.A., and | FRCP 58 |
| 19  JOEL MADERA CANDELARIO, | Date: March 22, 2010 |
| 20           Defendants. | Time: 9:00 a.m. Place:  Courtroom 8 |
| 21 | Honorable James Ware |
| 22 | |

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

   I. Introduction .......................................................................................... 1

  II. Statement of Relevant Facts ................................................................. 1

      A. Defendants Solicit Mr. Reyes and Ms. Salazar to Obtain a Refinance

      Loan ...................................................................................................... 1

      B. Mr. Reyes's and Ms. Salazar's Discussions with Candelario ................... 2

      C. The Reyes Loan Closing ...................................................................... 4

      D. Mr. Reyes Receives Copies of his Loan Documents ............................. 5

  III. Legal Standard for Motion for Summary Judgment ............................. 5

  IV. Argument ............................................................................................ 6

      A. There is a Significant Factual Dispute Between the Parties Over Whether
      Defendants Premier Home Funding and Joel Candelario were Acting as
      Agents of Wachovia ............................................................................ 6

      B. There is a Factual Dispute Over Whether the Truth in Lending Act
      Disclosures in this Case Were Adequate and Given Timely ...................... 9

      C. Mr. Reyes's California Translation Act Claim is Well Founded and is not
      Preempted by the Home Owners Loan Act ........................................... 11

      D. The Issue of Tender is a Factual Question ........................................ 12

      E. Whether Wachovia Violated RESPA by Paying Unlawful Fees and Kick-
      Backs is a Question of Fact for Trial .................................................... 14

      F. Disputed Facts Exist that Show Wachovia Was Negligent in this
      Transaction ....................................................................................... 15

      G. There are Facts in Dispute with regard to Plaintiff's UCL Claim against
      Wachovia .......................................................................................... 16

   V. Conclusion ......................................................................................... 17

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Anderson v. Liberty Lobby, Inc.,*
77 U.S. 242, 248 (1986)……………………………………………………………………...6

*Mathsushita Elec. Indus. Co. v. Zenith Radio Corporation,*
475 U.S. 574, 586 (1986)…………………………………………………………………6

**FEDERAL CASES**

*American Cas. Co. v. Krieger,*
181 F.3d 1113, 1121 (9th Cir. 1999)…………………….....................................................7

*Arroyo v. GMAC,*
1981 U.S. Dist. LEXIS 17967 at *12 (N.D. Ill. January 29, 1981)………………….…...11

*Berry v. Valence Tech., Inc.,*
175 F.3d 699, 703 (9th Cir. 1999) ………………………………………………………6

*Bjustrom v. Trust One Mortg. Corp.*
322 F.3d 1201, 1208 (9th Cir. 2003) …………………………………………………14, 15

*C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.,*
213 F.3d 474, 480 (9th Cir. 2000)……………………………………………………………7

*Maganallez v. Hilltop Lending Corp.*
505 F.Supp.2d 594, 604 (N.D. Cal. 2007)……………………………………………14, 15

*Mayfield v. Vanguard Sav. & Loan Ass'n.*
710 F. Supp. 143, 149 (E.D. Pa. 1989)………………………………………………..13

*Moore v. Mortgagestar, Inc.*
2002 U.S. Dist. LEXIS 27457 *26 (W.D. W. Va. Dec. 18, 2002)…………………..10

*Nat'l Liab. & Fire Ins. Co. v. Fiore*
187 Fed. Appx. 733 (9th Cir. 2006) (unpublished) ……………………………………7

*Sterten v. Option One Mortgage Corp.*
352 B.R. 380, 387 (Bankr. E.D. Pa. 2006) …………………………………………..13

*Stone v. Mehlberg* 28 F. Supp. 1341, 1353 (W.D. Mich. 1989)………………..……..10

*Sullivan v. Wash. Mut. Bank, FA*

2009 U.S. Dist. LEXIS 104074 * 12 (N.D. Cal. Oct. 23, 2009)............................17

*Yamamoto v. Bank of New York*
329 F. 3d 1167, 1171, 1172 (9th Cir. 2003)....................................................13

*Zamarippa v. Cy's Car Sales, Inc.*
674 F.2d 877, 879 n.1 (11th Cir. 1982) ........................................................11

**STATE COURT CASES**
*Family Fin. Servs. v. Spencer*, 41 Conn. App. 754, 771 (1996)............................13

*Garlock Sealing Techs., LLC v. NAK Sealing Techs. Corp.*
148 Cal.App.4th 937, 965 (2007).................................................................7

*Michelson v. Hamada,* 29 Cal.App.4th 1566, 1576 (1994).....................................7

*Podolsky v. First Healthcare Corp.,*
50 Cal. App. 4th 632, 647, 58 Cal. Rptr. 2d 89 (1996) ......................................17

*Shvarts v. Budget Group, Inc.,*
81 Cal. App. 4th 1153, 1159, 97 Cal. Rptr. 2d 722 (2000) .................................17

**FEDERAL STATUTES**

12 U.S.C. § 2601(a) ...............................................................................14

12 U.S.C. § 2607(a) ...............................................................................14

12 U.S.C. § 2607 (c) ..............................................................................15

12 U.S.C. § 2607(d)(2) ...........................................................................14

15 U.S.C. § 1601 ....................................................................................9

15 U.S.C. § 1635 ....................................................................................9

**CALIFORNIA STATUTES**

Cal. Business and Professions Code § 17200 ................................................16

Cal. Civil Code § 1632 ...........................................................................11

Cal. Civil Code §1632 (a)(2) ....................................................................12

Cal. Civil Code § 2295 ……………………………………………………………7

Cal. Civil Code § 2298 ……………………………………………………...……7

Cal. Civil Code § 2299 ……………………………………………………...……7

Cal. Civil Code § 2300 ……………………………………………………..……7

Cal Civil Code § 2338 ……………………………………………………..……16

## FEDERAL REGULATIONS

12 C.F.R. § 226.15(b) ……………………………………………………...……9

12 C.F.R. § 226.18 ………………………………………………………..……9

12 C.F.R. § 226.23(a)(1) …………………………………………………...…10

12 C.F.R. § 226.23(a)(3) …………………………………………………..…10

12 C.F.R. § 226.23(b)(1) …………………………………………………..9, 10

24 C.F.R. § 3500.14(c) …………………………………………………………15

24 C.F.R. § 3500.14(g) …………………………………………………...……15

24 C.F.R. § 3500.14 (g) (2)……………………………………………………..…15

## FEDERAL REGISTER        .

66 Fed. Reg. 53055 (2001) ……………………………………………..……………14

69 Fed. Reg. 16,769, 17,772 (March 31, 2004) …..…………………………………13

## OTHER AUTHORITIES

S. Rep. No. 93-866 (1974), reprinted in 1974 U.S.C.C.A.N. 6546, 6551 ………………14

Restatement (Third) of Agency § 1.04………………………………………………7

Restatement (Third) of Agency § 2.04………………………………………………16

Restatement (Third) of Agency § 3.14-3.16………………………………………7

1   **I.    INTRODUCTION**

2          In a classic case of bait and switch, Defendants fraudulently induced Plaintiff Bernardo

3   Reyes (hereinafter "Mr. Reyes") into refinancing his existing home mortgage in October 2007.

4   Promising one thing during the discussions, which occurred exclusively in Spanish, then taking

5   advantage of Mr. Reyes's limited ability to read and write English and having him sign

6   documents written in English, Wachovia provided Mr. Reyes with a vastly different refinance

7   loan then the one he believed he was getting.  Wachovia chose to rely exclusively on a mortgage

8   broker, Defendant Premier Home Funding ("Premier"), to actually carry out the transaction.

9   Premier acted on behalf of Wachovia and, through both the negligence of the lender and the fraud

10  of the broker, Mr. Reyes now finds the value of his home significantly less than his mortgage

11  loan, and he risks losing his home because his loan payments continue to increase.

12         The facts show that loan documents were falsified, that Wachovia failed to engage in any

13  supervision over Premier or the loan process, and that neither Premier nor Wachovia informed

14  Mr. Reyes of the basic terms of his loan as required by federal law.  Wachovia also ignores its

15  statutory duty to make sure that Mr. Reyes received the disclosures required by federal law.

16  Now, Wachovia asks this Court to declare that it did no wrong, and to dismiss each and every

17  claim against it.  Wachovia asks for summary judgment on disputed issues of fact, not issues of

18  law.  Therefore the Court should deny Wachovia's Motion.

19  **II.   STATEMENT OF RELEVANT FACTS**

20         **A.    Defendants Solicit Mr. Reyes and Ms. Salazar to Obtain a Refinance Loan**

21         Bernardo Reyes is a forty-five year old man who has owned his home at 14030 Aldo

22  Court in San Jose, California, since February 2000.  Declaration of Bernardo Reyes ("Reyes

23  Decl.") ¶ 6.  Mr. Reyes and his wife, Olga Salazar were both born and raised in Mexico.  *Id.* at ¶

24  2; Declaration of Olga Salazar ("Salazar Decl.") ¶ 3.  Mr. Reyes received an education through

25  the third grade.  Reyes Decl. ¶ 3.  Mr. Reyes is a monolingual Spanish-speaker who reads and

26  writes almost no English.  *Id.* at ¶ 4.  Ms. Salazar speaks limited English but does not know how

27  to read English.  Salazar Decl. ¶ 3.  In August 2007, Mr. Reyes received a letter from Defendant

28  Premier written in Spanish urging him to refinance at a low interest rate because his monthly

PLAINTIFF'S OPP'N TO DFEENDANT WACHOVIA
MORTGAGE FSB's MSJ
C08-04606 JW

1   mortgage payment was about to increase.  Reyes Decl. ¶ 7; Salazar Decl. ¶ 5.  Because the

2   interest rate on Mr. Reyes's existing loan was scheduled to increase in early November 2007, and

3   because the letter indicated that Mr. Reyes was eligible for monthly payments as low as $1,200,

4   he and his wife decided to call Premier to discuss the possibility of refinancing.  Reyes Decl. ¶ 8;

5   Salazar Decl. ¶ 5.  Defendant Candelario, an agent with Premier, answered the telephone in

6   Spanish, and conducted this and all future communications with Mr. Reyes and Ms. Salazar

7   regarding the refinance loan exclusively in Spanish.  Salazar Decl. ¶ 7.

8          During the initial discussion with Defendant Candelario, Ms. Salazar explained that she

9   had received the letter, that the introductory interest rate on their current loan was about to expire,

10   and that they wanted to see if they could refinance to get a lower monthly payment, as described

11   in the letter.  *Id.* at ¶ 8.  Mr. Reyes's existing loan on the property totaled approximately $339,000

12   and had a monthly payment of approximately $1,550, with principal and interest included.  Reyes

13   Decl. ¶ 9.  Defendant Candelario responded by saying, not only that he could lower Mr. Reyes's

14   monthly payment, but also that he could get Mr. Reyes $30,000 cash out of the house.  Salazar

15   Decl. ¶ 9.  Candelario also told Ms. Salazar that because he was a *direct representative of World*

16   *Savings Bank*, he would be able to obtain an affordable loan for Mr. Reyes, and fees would be

17   limited to $4,000.  *Id.* at ¶ 10.  Further, Candelario promised that the loan would have a fixed

18   interest rate for the first five years and no prepayment penalty.  *Id* at ¶ 11.

19          **B.     Mr. Reyes's and Ms. Salazar's Discussions with Candelario**

20          Within a week's time, Candelario called back and spoke with Ms. Salazar.  *Id* .at ¶ 12.

21   Candelario said that he could obtain a refinance loan for Mr. Reyes with a fixed payment of less

22   than $1,530 per month for a period of five years, principal and interest included, that there would

23   be no prepayment penalty, that Mr. Reyes would receive $30,000 cash from the loan, and that

24   fees would be limited to $4,000.  *Ibid*; Reyes Decl. ¶ 12.  Candelario also requested that Mr.

25   Reyes mail copies of his pay stubs to verify his employment and income.  Salazar Decl. ¶ 13.

26   Ms. Salazar said that she would relay the offer to Mr. Reyes.  *Id.*  That evening, Ms. Salazar

27   conveyed the proposed terms of the refinance loan to Mr. Reyes.  *Id* at ¶ 14.  Relying on

28   Defendant Candelario's representations regarding the terms of the proposed refinancing deal, Mr.

2

1    Reyes decided to move forward with refinancing his home through Defendants. Reyes Decl ¶ 13;

2    Salazar Decl. ¶ 14.

3       Ms. Salazar then faxed copies of Mr. Reyes's salary check stubs to Candelario as

4    requested. Salazar Decl. ¶ 15. Despite the fact that Mr. Reyes submitted truthful information to

5    Premier, the loan application submitted by Premier falsely inflated his income. The loan

6    application states that he earned the sum of $8,120 per month from employment as a manager of a

7    steel services center. Declaration of Annette Kirkham, Exh. A ("Kirkham Decl."). In fact, Mr.

8    Reyes was employed by a sheet metal company, and only earned approximately $2,400 per

9    month. Reyes Decl. ¶ 5.

10       When Ms. Salazar called Candelario back, Candelario answered the telephone by saying,

11    "World Savings Bank, can I help you?" Salazar Decl. ¶ 16. Ms. Salazar then told Candelario that

12    Mr. Reyes wanted to go ahead with the loan. Candelario said that he would prepare the papers

13    and get back to them soon. *Id.* at ¶ 17. During the month of September 2007, when Ms. Salazar

14    called Candelario to inquire about the progress of the loan, Candelario answered the phone each

15    time by saying, "World Savings Bank, can I help you?" *Id.* at ¶ 18. Candelario then assured Ms.

16    Salazar that the papers were being processed, that Mr. Reyes would be able to lower his monthly

17    payments, and that there was nothing to worry about. *Id.* at ¶ 19. On the afternoon of October 5,

18    2007, Candelario called the Reyes-Salazar home to let them know that the loan documents were

19    finally ready to be signed. *Id.* at ¶ 20. Candelario told them that a person named Rafael

20    Montejano ("Montejano") would bring over the loan documents for closing at about 9:00 p.m.

21    *Ibid.* Montejano arrived at the Reyes-Salazar home at 9:00 p.m. on October 5, 2007. Reyes Decl.

22    ¶ 14. Mr. Reyes believed that Mr. Montejano worked with Candelario and for Premier. *Ibid.*

23    Mr. Montejano was not retained or hired by Mr. Reyes to act as his interpreter. *Ibid.*

24       Although the loan had been negotiated exclusively in Spanish, the loan documents were

25    written in English, and no written translation was provided to Mr. Reyes. *Id.* at ¶ 19. Montejano

26    did not leave copies of the loan documents for Mr. Reyes after they had been signed. *Id.* at ¶ 16.

27

28

1

### C.    The Reyes Loan Closing

2       On October 11, 2007, Ms. Salazar received a call from Defendant Candelario.  Salazar

3   Decl. ¶ 21.  He told her that there were some papers that needed to be signed immediately, or the

4   loan would not go through.  *Ibid.*  Candelario told Ms. Salazar that he would send her the

5   documents via Western Union, and told her that she should sign and return the documents by fax.

6   *Ibid.*  Candelario further told Ms. Salazar that she could sign the documents in place of Mr. Reyes

7   since he needed the documents immediately.  *Id* at ¶ 22.  Ms. Salazar followed Candelario's

8   instructions, going to Western Union and signing the English-language documents, even though

9   she is not a signatory on the Note.  *Id.* at ¶ 23.  She then immediately faxed the documents back to

10   Candelario.  *Ibid.*

11       Because Mr. Reyes did not receive any of his loan documents at the time his loan closed,

12   he sent a letter to World Savings requesting copies of his documents.  Reyes Decl. ¶ 17.  Kirkham

13   Decl., Exh. B.  When Mr. Reyes finally received copies of these documents in November 2007,

14   he saw that the document signed by his wife at Candelario's direction was the Notice of Right to

15   Cancel.  Reyes Decl.¶ 18.  The Notice of Right to Cancel was signed and returned by Ms.

16   Salazar, who was not a signatory on the loan, at the request of Candelario on October 11, 2007,

17   and a copy was provided to Mr. Reyes only after the three-day window in which he could have

18   exercised his right to cancel the loan had long expired.  Kirkham Decl., Exh. C.

19       When Mr. Reyes received his first mortgage payment statement he was confused by the

20   statement, which reflected the terms of World Savings Bank's Pick-a-Payment loan, providing for

21   four payment options of which he had previously been unaware.  Reyes Decl. ¶ 20.  Mr. Reyes

22   did not choose the Pick-a-Payment Loan.  *Ibid.*  Mr. Reyes wanted the refinance loan he had been

23   promised, which included payments of both principal and interest with a fixed interest rate for the

24   period of five years.  *Ibid.*

25       Concerned, Ms. Salazar called World Savings Bank.  Salazar Decl. ¶ 26.  She explained

26   that there must have been some mistake because Mr. Reyes was supposed to receive a loan with a

27   fixed monthly payment of no more than $1,530, principal and interest included, for the first five

28   years and a cash-out payment in the amount of $30,000.  *Ibid.*  The World Savings representative

1    told Ms. Salazar that everything was signed and there was nothing World Savings could do to fix

2    the loan. *Id.* at ¶ 27.

3        **D.    Mr. Reyes Receives Copies of his Loan Documents.**

4            In early November 2007, Mr. Reyes finally received, from World Savings, copies of the

5    documents that he signed at closing on October 5, 2007. Reyes Decl. ¶ 18. This package of

6    documents contained two different Truth in Lending Act Disclosures – both signed and dated by

7    Mr. Reyes on October 5, 2007 – reflecting dramatically different loan terms. The first Truth in

8    Lending Act Disclosure states that it was prepared by Premier Group Lending, Inc., on September

9    13, 2007. Kirkham Decl., Exh. D. It shows an Annual Percentage Rate of 2.75%, a Finance

10   Charge of $171,429, an Amount Financed of $365,000, and a Total of Payments of $536,429. In

11   addition, it reflects relatively stable payments over the 360 months of the loan, with 359 payments

12   of $1,490.08 and one final payment of $1,490.28. The second Truth in Lending Disclosure

13   statement contains wildly different loan terms than the first. Kirkham Decl., Exh. E. This

14   document appears to have been prepared on October 5, 2007, and bears the name "World

15   Savings" across the top of the page. *Ibid.* It discloses an Annual Percentage Rate of 8.459%, a

16   Finance Charge of $850,383.36, an Amount Financed of $364,220.54 and a Total of Payments of

17   $1,214,603.90. *Ibid.* In addition, it reflects monthly payments that steadily increase from

18   $1,530.91 to $2,935.14 over the first nine-and-a-half years of the loan, and then leveling off at

19   $3,948.41 for the remainder of the 30-year term. Mr. Reyes's current monthly mortgage payment

20   is approximately $1,765.00 and Mr. Reyes's principal loan balance is now $401,245.00. Reyes

21   Decl. ¶ 21. Finally, Mr. Reyes's home is now significantly less than his mortgage. In fact, his

22   home is now only worth approximately $277,000. *Ibid.*

23           Mr. Reyes does not seek to avoid his home loan. *Id.* at ¶ 22. Mr. Reyes pays his

24   mortgage every month and is current on all of his payments. *Ibid.* Mr. Reyes wants only to have

25   the mortgage terms that he was promised. *Ibid.*

26   **III.   LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT**

27           Summary judgment and summary adjudication are appropriate only when there is no

28   genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

1   Fed. R. Civ. P. 56. A genuine issue exists if "the evidence is such that a reasonable jury could

2   return a verdict for the nonmoving party," and material facts are those "that might affect the

3   outcome of the suit under the governing law." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242,

4   248 (1986). A court should grant summary judgment only if "the pleadings, depositions, answers

5   to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6   genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

7   of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine

8   issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

9   574, 586 n.10 (1986). The court should view the underlying facts and all reasonable inferences

10  therefrom in the light most favorable to the party opposing the motion. *See Berry v. Valence*

11  *Tech., Inc.*, 175 F.3d 699, 703 (9th Cir. 1999).

12  **IV.   ARGUMENT**

13         The facts in this case demonstrate that there was at least negligence and likely fraud by

14  both the broker and the lender in originating the Reyes loan. The question is how to assign

15  responsibility for that misconduct. Completely ignoring the statutory obligations conferred upon

16  it by the Truth in Lending Act, Wachovia asserts that it is blameless, and asks that the Court

17  dismiss all claims against it. Mr. Reyes disagrees; Wachovia is both directly and indirectly liable

18  for the misconduct that indisputably occurred during this transaction. These are intensely factual

19  disputes, precluding summary judgment on each and every cause of action in Mr. Reyes's

20  complaint.

21         **A.    There Is a Significant Factual Dispute Between the Parties Over**
22              **Whether Defendants Premier Home Funding and Joel Candelario**
                **Were Acting as Agents of Wachovia.**
23

24         Wachovia asserts that Premier Home Funding, and its purported agent, Joel Candelario

25  were "never Wachovia's agent for any purpose in this loan or any others." [Doc. 71-1]

26  (Wachovia Mem. P&A. at 2). Wachovia's position, therefore, is that it is blameless with respect

27  to the acts and misdeeds of its co-defendants. *Id.* at 15. Whether or not an agency relationship

28  existed is an intensely factual one and is not appropriate for resolution here. Moreover,

1  Wachovia's assertions that Premier was never authorized to be its agent directly contradict
2  evidence that it submitted to this court in support of its Motion for Summary Judgment, thereby
3  creating an obvious factual dispute that is not appropriate for resolution on summary judgment.

4       Agency is the fiduciary relationship that arises when one person (a principal) manifests
5  assent to another person (an agent) that the agent shall act on the principal's behalf and subject to
6  the principal's control, and the agent manifests assent or otherwise consents so to act. *See* Cal.
7  Civil Code § 2295; Restatement (Third) of Agency § 1.01. Agency may be actual or ostensible.
8  Cal. Civil Code § 2298. While actual agency requires an employment relationship between the
9  principal and agent, *see* Cal. Civil Code § 2299, ostensible agency requires only that the principal
10 "by want of ordinary care, causes a third person to believe another to be his agent who is not
11 really employed by him." Cal. Civil Code § 2300. The identity of the principal can be
12 undisclosed or unidentified to the third party. *See* Restatement (Third) of Agency § 1.04. Also,
13 whether a relationship is characterized as agency in an agreement between the principal and agent
14 is not controlling. *Id.* at § 1.02 ("[H]ow the parties to any given relationship label it is not
15 dispositive."); *Nat'l Liab. & Fire Ins. Co. v. Fiore*, 187 Fed. Appx. 733 (9th Cir. 2006)
16 (unpublished) (holding that a statement in a contract that an insurance broker "has no authority to
17 accept or bind" an insurance company is not dispositive of agency, and that summary judgment
18 was improperly granted). "To establish ostensible authority, the principal's consent need not be
19 express." *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.
20 2000). Finally, there is nothing that prohibits an individual from acting as an agent for multiple
21 principals at the same time. Restatement (Third) of Agency § 3.14-3.16.

22      The determination of whether an agency relationship exists is an intensely factual
23 question. *See American Cas. Co. v. Krieger*, 181 F.3d 1113, 1121 (9th Cir. 1999) ("Ostensible
24 authority is for the trier of fact to resolve. It should not be decided by an order granting a
25 summary judgment"); *Michelson v. Hamada*, 29 Cal.App.4th 1566, 1576 (1994) ("The existence
26 of an agency is a factual question within the province of the trier of fact whose determination may
27 not be disturbed on appeal if supported by substantial evidence"); *Garlock Sealing Techs., LLC
28 v. NAK Sealing Techs. Corp.*, 148 Cal.App.4th 937, 965 (2007) ("Only when the essential facts

1   are not in conflict will an agency determination be made as a matter of law.").

2   In its Motion, Wachovia patently ignores language in its own evidence that could lead a

3   reasonable fact-finder to determine that Premier was authorized to act as its agent for limited

4   purposes. In its Real Estate Agency Disclosure, a document provided to Mr. Reyes as part of his

5   loan packet, Wachovia disclosed that Premier "may act as the limited agent of the lender for

6   certain purposes, including but not limited to, making disclosures. . . ." [Doc. 71-2] (Declaration

7   of Jeff Roberts in Support of Motion for Summary Judgment, or in the alternative, Partial

8   Summary Judgment (Roberts Decl.) at ¶3, Exhibit 1). In its motion, Wachovia conveniently

9   focuses on the language in that disclosure that states that a broker generally acts as the agent for

10  the borrower in a transaction. Whether or not adequate disclosures were made to Mr. Reyes, and

11  whether or not those disclosures were made in the appropriate language, is at the heart of this

12  case. Based on the evidence stating that Premier was permitted to be Wachovia's limited agent

13  for purposes of giving Mr. Reyes disclosures, a reasonable fact-finder could determine that

14  Wachovia is liable for Premier's wrongdoing with respect to those disclosures. Therefore, this

15  Court may not decide the issue of agency on summary judgment.

16  Moreover, a fact-finder could determine that Mr. Reyes reasonably believed that Premier

17  and Candelario were acting as agents of Wachovia because of the representations made by

18  Candelario during their conversations that he was working for World Savings. Reyes Decl. ¶ 12;

19  Salazar Decl. ¶¶10, 16. Furthermore, the trier of fact could reasonably find that Wachovia had

20  the intent for Premier to carry out this loan transaction on its behalf, subject to Wachovia's

21  oversight and control. For example, Wachovia admits that it never spoke to Mr. Reyes and that it

22  relied on Premier to conduct various aspects of the loan transaction. [Doc. 71-2] Roberts Decl. ¶

23  11. Mr. Reyes believed that Candelario and Premier were representatives of World Savings

24  because Candelario made representations to that effect whenever Mr. Reyes or Ms. Salazar spoke

25  with him. Reyes Decl. ¶ 12; Salazar Decl. ¶¶ 10, 16. Additionally, Premier was a member of

26  World Savings Preferred Mortgage Broker (PMB) program which enabled Premier to submit

27  applications to World Savings and receive compensation from World Savings. [ Doc. 71-2]

28  Roberts Decl. ¶¶ 23, 24.

1    Just because Wachovia insists that Premier was not its agent does not make it so.  Taken

2    together, the evidence here could lead a reasonable trier of fact to conclude that an agency

3    relationship existed between Premier and World Savings, making summary judgment

4    inappropriate.

### B.    There Is a Factual Dispute Over Whether the Truth in Lending Act Disclosures in this Case Were Adequate and Given Timely.

7    Wachovia argues that Mr. Reyes's claims under the Truth in Lending Act (TILA) fail

8    because it provided Mr. Reyes with all required disclosures.  [Doc. 71-1] (Wachovia Mem P&A

9    at 7 &10).  The purpose of TILA is to ". . . assure a meaningful disclosure of credit terms so that

10   the consumer will be able to compare more readily the various credit terms available to him and

11   avoid the uninformed use of credit."  15 U.S.C. § 1601.  To accomplish this goal, TILA mandates

12   that certain disclosures be made to consumers in connection with consumer credit transactions.  It

13   prescribes the content, the manner and the timing in which the disclosures are made.  15 U.S.C. §

14   1635; 12 C.F.R. 226.15(b) and 226.18.[1]

15   Regulation Z, promulgated pursuant to TILA, provides that notice of the right of cancel

16   must be provided to a consumer "on a separate document that identifies the transaction and . . .

17   clearly and conspicuously disclose[s]" certain information describing the transaction and the

18   consumer's rights, specifically:

19        (i)    The retention or acquisition of a security interest in the consumer's
                principal dwelling.

20        (ii)   The consumer's right to rescind the transaction.

21        (iii)  How to exercise the right to rescind, with a form for that purpose,
                designating the address of the creditor's place of business.

23        (iv)   The effects of rescission, as described in paragraph (d) of this section.

24        (v)    The date the rescission period expires.

25   12 C.F.R. §226.23(b) (1).

26   Regulation Z requires that "each consumer whose ownership interest is or will be subject

27   _____

[1] Creditors must clearly and conspicuously disclose material terms of the transaction, including but not limited to the
28   amount financed, the finance charge, the payment schedule, and whether there is a prepayment penalty. Reg. Z.
     Section 226.18.

1   to the security interest shall have right to rescind the transaction" and that the creditor "shall

2   deliver two copies of the notice of the right of rescission to each consumer entitled to rescind." 12

3   C.F.R. §226.23(a) (1), (b) (1).  Furthermore, the borrower must receive two copies of the notice

4   of right to cancel – one to keep and one to use if the option is exercised.  *Stone v. Mehlberg*, 728

5   F. Supp. 1341, 1353 (W.D. Mich. 1989) (holding that requirement of two notices to each obligor

6   is not a mere technicality and noting that effective exercise of that right obviously depends upon

7   the delivery of one copy of the rescission notice to the creditor and retention by the obligor of the

8   other copy).  If the creditor fails to provide the notice of right of rescission in conformity with

9   Regulation Z or otherwise fails to provide all of the "material" TILA disclosures, the consumer's

10  right to rescind is extended for up to three years.  12 C.F.R. § 226.23(a)(3).

11      Here, the evidence could lead a jury to reasonably believe that the disclosures Mr. Reyes

12  received were inadequate and untimely.  With regard to adequacy of disclosure of the terms of his

13  loan, Mr. Reyes received two conflicting Truth in Lending Act disclosure statements.  Kirkham

14  Decl., Exhs. D & E.  With regard to timeliness, Mr. Reyes did not receive notice of his right to

15  cancel the transaction at the time he signed the loan paperwork.  Reyes Decl. ¶ 16.  Ms. Salazar,

16  Mr. Reyes's wife, who was not a signatory on the loan, received the notice of right to cancel the

17  transaction on October 11, 2007.  Kirkham Decl., Exh. C.  Moreover, Mr. Reyes did not receive

18  copies of his loan documents, including his TILA disclosures, until weeks after the loan closed.

19  Reyes Decl. ¶ 18; Kirkham Decl., Exh. F.  The testimony of Mr. Reyes and Ms. Salazar, as put

20  forth in their declarations, directly contradicts the evidence offered by Wachovia in support of its

21  motion, thereby creating a triable issue of fact with regard to whether or not Mr. Reyes has the

22  right to rescind his loan under TILA[2].

23      In addition, while TILA does not explicitly require that disclosures must be in any

24  particular language, other courts have noted in dicta that failure to translate loan documents may

25

26  [2] The fact that Mr. Reyes signed the Acknowledgement of Receipt does not establish that he received the required
    TILA disclosures.  *See Moore v. Mortgagestar, Inc.*, 2002 U.S. Dist. LEXIS 27457 *26 (W.D. W. Va. Dec. 18, 2002)
27  (holding that, while the borrowers' written acknowledgment of receipt of the disclosures or documents mandated by
    the TILA creates a rebuttable presumption of the delivery of such items, the testimony of a borrower that she did not
28  receive two copies of the notice form has been held to sufficiently rebut the presumption of delivery).

1   constitute a violation of the Truth in Lending Act. *See Zamarippa v. Cy's Car Sales, Inc.*, 674

2   F.2d 877, 879 n.1 (11th Cir. 1982) ("Although appellees' argument has apparently not been

3   explicitly considered in the Fifth or Eleventh Circuits, we have allowed recovery to a plaintiff

4   who was unable to comprehend TILA disclosures because of inability to understand English");

5   *Arroyo v. GMAC*, 1981 U.S. Dist. LEXIS 17967 at *12 (N.D. Ill. January 29, 1981) ("It is

6   difficult for the court to imagine how a 'meaningful disclosure of credit terms' could be made to

7   these particular plaintiffs without the aid of an unexecuted contract that they were capable of

8   reading"). The copies of the TILA disclosures Mr. Reyes received were in English, a language he

9   did not understand and could not read. Reyes Decl. ¶ 4. Further, when executing the loan

10  documents, Mr. Reyes was often shown only a signature block of a document without having the

11  entire document revealed to him. *Id.* at ¶ 15.

12      The factual disputes over exactly which documents and what information was revealed to

13  Mr. Reyes, which documents he actually signed, and when he actually received these documents

14  can only be resolved by the trier of fact. Thus, the Court should deny Wachovia's motion for

15  summary judgment of Mr. Reyes's TILA claim.

16      **C.    Mr. Reyes's California Translation Act Claim is Well Founded**
17             **and is not Preempted by Home Owners Loan Act.**

18      This Court has twice found that the California Translation Act ("CTA") brought under

19  California Civil Code section 1632 is not preempted by the Home Owners Loan Act (HOLA).

20  [Doc. 45 and 68] (Order Denying Defendant's Request for Reconsideration at 2). Mr. Reyes

21  claims that Wachovia violated the CTA which states, "Any person engaged in a trade or business

22  who negotiates primarily in Spanish . . . orally or in writing . . .shall deliver to the other party to

23  the contract or agreement and prior to the execution thereof, a translation of the contract or

24  agreement in the language in which the contract or agreement was negotiated, which includes a

25  translation of every term and condition in that contract or agreement." Cal. Civil Code § 1632.

26      Wachovia's argument that Mr. Reyes's CTA claim is preempted because a translation of

27  the loan documents would alter the meaning of the documents is without merit. This Court has

28  already found that the "CTA is not a state law seeking to require any sort of 'disclosure.' The

1    CTA requires a translation of the contract; it does not require any specific statements, information

2    or other content to be disclosed." [Doc. 45] (Order Granting in Part and Denying in Part Motion

3    to Dismiss at p.7).  Wachovia's self-serving declaration from Alejandro Franco stating that any

4    translation requires judgment calls by the translator does not provide support for its argument that

5    CTA is preempted by HOLA.  [Doc. 71-3] Franco Decl. ¶ 3.  Moreover, Mr. Franco

6    acknowledges that, although the words may be different, the meaning of the documents would not

7    change.  Franco Decl. ¶ 4.

8         In order to comply with the CTA, there must be some effort to make certain that the loan

9    documents are presented in a way that a non-native English speaker can understand. *See* Cal.

10   Civil Code 1632 (a)(2).  Whether that requires a full translation, or just some further explanation

11   by the broker or lender, is a fact-specific question.  Mr. Reyes alleges that Wachovia chose to use

12   Premier, a broker, as its agent in this transaction, that Premier used both Candelario and

13   Montejano as translators to negotiate with Mr. Reyes in Spanish, and that Premier—as

14   Wachovia's agent, responsible for and authorized to make decisions regarding disclosure on its

15   behalf, as outlined in the Real Estate Agency Disclosure— failed to translate any of the loan

16   documents into Spanish.  [Doc. 71-2] (Roberts Decl. at ¶3, Exh. 1).

17        Because there are ample questions of fact about whether Wachovia—through its agent,

18   Premier—gave language-appropriate disclosures to Mr. Reyes under the CTA, and because this

19   Court has twice decided the legal issue that HOLA does not preempt the CTA, summary

20   judgment should not be granted.

21        **D.    The Issue of Tender Is a Factual Question.**

22        Wachovia makes a blanket assertion that Mr. Reyes is unable to tender the proceeds of the

23   loan and, thus, is not entitled to rescission as a remedy for Wachovia's violations of TILA and the

24   CTA.[3]  Inappropriately focusing on alleged deficiencies of Mr. Reyes's pleading of his TILA

25   claim, Wachovia has produced no evidence to show that Mr. Reyes cannot tender the proceeds of

26

27

28   _____

     [3] Defendant's argument with regard to Mr. Reyes's TILA rescission claim seems to address pleading the ability to
     tender which is inappropriate at summary judgment.  [Doc. 71-1] (Wachovia Mem. P&A at 8).

1   the loan.[4]

2       Whether rescission should be conditioned upon the borrower's ability to tender depends

3 upon the equities present in a particular case and where as here the defendant contests the

4 rescission, the rescission does not actually occur until the right to rescind is determined in the

5 borrower's favor. *Yamamoto v. Bank of New York*, 329 F. 3d 1167, 1171, 1172 (9th Cir. 2003).

6 Here, no finder of fact has made a determination of whether Mr. Reyes has a right to rescind his

7 loan under TILA. As mentioned above, ample factual questions exist regarding that issue.

8       Additionally, the amount of Mr. Reyes's tender obligation is a factual question which

9 must take into consideration factors such as the amount of closing costs and the payments Mr.

10 Reyes has made on the loan to date. In addition, Mr. Reyes sent Wachovia notice of his intent to

11 rescind the loan on May 29, 2008, before the instant lawsuit was filed. Kirkham Decl., Exh. G.

12 On June 30, 2008, Wachovia denied Mr. Reyes's valid rescission. Kirkham Decl., Exh. H. The

13 failure of a lender to recognize a valid rescission negates the borrower's tender obligation. *See* 69

14 Fed. Reg. 16,769, 17,772 (March 31, 2004) (explaining that the creditor's tender triggers the

15 consumer's duty to return any money or property that the creditor delivered to the consumer). A

16 finder of fact must make a determination of whether Mr. Reyes has a tender obligation. If a

17 finder of fact determines that Wachovia improperly denied Mr. Reyes's rescission request, that

18 finder of fact could determine that Mr. Reyes does not have a tender obligation at all. *See, e.g.,*

19 *Family Fin. Servs. v. Spencer*, 41 Conn. App. 754, 771 (1996) (creditors failure to respond to a

20 rescission notice negated consumer's duty to tender transaction involving unconscionable,

21 overreaching transaction and an uneducated consumer with limited reading and English-language

22 capabilities).

23       Lastly, since the goal of rescission is to return the parties to the *status quo ante*, Mr.

24 Reyes's situation before this loan occurred must be considered, specifically, the amount of his

25

26   [4] In its June 17, 2009 Order on Wachovia's Motion to Dismiss, this Court granted Plaintiff leave to amend his
    Complaint to plead that he attempted to tender or was capable of tendering or that equitable circumstances exist that

27   conditioning rescission on any tender would be appropriate. On June 26, 2009, Plaintiff filed a First Amended
    Complaint to correct these pleading deficiencies and Wachovia filed an Answer—not another Motion to Dismiss for

28   inadequacy of pleadings—on July 16, 2009.

    PLAINTIFF'S OPP'N TO DFEENDANT WACHOVIA
                       MORTGAGE FSB'S MSJ
                          C08-04606 JW

1   loan payments and the amount of equity in his home before the instant transaction.[5]  These are

2   factual questions that cannot be resolved on summary judgment.

3

4   **E.      Whether Wachovia Violated RESPA by Paying Unlawful Fees and Kickbacks Is a Question of Fact for Trial.**

5

6   Regardless of how the broker compensation is handled, all costs are ultimately paid by the

7   borrower, whether through direct fees paid to the broker, through the loan principal or through the

8   interest rate arranged with the lender.  *See* HUD Policy Statement 2001-I, 66 Fed.Reg. 53052

9   (2001) at 10081.  The express purpose of the Real Estate Settlement Procedures Act ("RESPA")

10  is "to ensure that consumers are . . . protected from unnecessarily high settlement charges caused

11  by certain abusive practices. . . ." 12 U.S.C. § 2601(a).  Congress implemented section 2607 of

12  RESPA to eliminate the practice of settlement service providers receiving kickbacks in exchange

13  for business referrals and collecting fees for which they performed no actual services.  S. Rep.

14  No. 93-866 (1974), reprinted in 1974 U.S.C.C.A.N. 6546, 6551.  Section 2607(a) of RESPA

15  states, in part, that, "[n]o person shall give and no person shall accept any fee, kickback, or thing

16  of value pursuant to any agreement or understanding, oral or otherwise. . . ." 12 U.S.C. §

17  2607(a).  RESPA also provides that, "[a]ny person or persons who violate the prohibitions or

18  limitations of this section shall be jointly and severally liable to the person or persons charged for

19  the settlement service involved in the violation." 12 U.S.C. § 2607(d)(2).  "RESPA requires a

20  loan-specific analysis of whether the total mortgage broker compensation from all sources is

21  reasonable." *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 604 (N.D. Cal. 2007),

22  citing *Bjustrom v. Trust One Mortg. Corp.*, 322 F.3d 1201, 1208 (9th Cir. 2003).

23  Case law and federal regulations clearly indicate that a fact-specific analysis must be

24  made with regard to the fees paid.  The determination of whether the fees paid to Premier were

25

26  _____

[5] Payment of tender can take many different forms and courts have fashioned a variety of means, tailored on a case-by-case basis to the equities and circumstances of each particular case.  *See e.g., Mayfield v. Vanguard Sav. & Loan Ass'n.*, 710 F. Supp. 143, 149 (E.D. Pa. 1989 (restoring status quo ante by allowing consumer to tender through installment payments); *Sterten v. Option One Mortgage Corp.*, 352 B.R. 380, 387 (Bankr. E.D. Pa. 2006)( permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction is balanced, equitable approach).

1    unreasonable must be made with reference to the fraud perpetrated by Premier in procuring the

2    Wachovia loan on Mr. Reyes's behalf. HUD 2001-1 Policy Statement, 66 Fed. Reg. 53055

3    (2001) (holding that the valuation of whether the fees are reasonable must be determined based on

4    the value of the services to *both* the borrower and the lender); *see also Bjustrom v. Trust One*

5    *Mortgage Corp.*, 322 F. 3d 1201, 1208 (9th Cir. 2003) (holding that RESPA requires a loan-

6    specific analysis of whether the total mortgage broker compensation from all sources is

7    reasonable). Although mere referrals are not compensable, fees for goods or services actually

8    rendered are legal. 12 U.S.C. § 2607 (c); 24 C.F.R. § 3500.14 (c) and (g). However, the payment

9    must bear a reasonable relationship to the market value of the goods furnished or services

10   provided. 24 C.F.R. § 3500.14 (g)(2). If a fee is excessive, then "the excess is not for services or

11   goods actually performed or provided;" in that case, the fee is unearned and therefore illegal. 24

12   C.F.R. § 3500 (g)(2). A reasonable jury could find that the Premier defendants, in committing

13   this fraud, did not earn or provide any services of value to Mr. Reyes. Wachovia's payments to

14   the Premier Defendants constitute violations of RESPA, and Wachovia is liable for that violation.

15      Wachovia argues that the Mr. Reyes cannot prove that the lender paid broker commission

16   or total commission constitutes an unreasonable fee. However, an expert witness is required to

17   say what is reasonable in terms of the market and the services provided to Mr. Reyes. Thus,

18   Wachovia's argument is misplaced because it is for the *jury* to determine whether the fees in this

19   case were reasonable in light of what Mr. Reyes received.

20      In addition, Wachovia ignores that it may be liable under RESPA for paying a yield

21   spread premium if the yield spread premium paid to a broker makes the broker's total

22   compensation unreasonable. *Maganallez* at 604 (holding that whether defendants misrepresented

23   the terms of the loan, whether plaintiffs incurred a higher interest rate, and the qualifications and

24   skills of the broker, are all factual issues that affect the value of the services provided). Again, a

25   jury must decide whether the broker's total compensation was unreasonable in violation of

26   RESPA.

27

28

PLAINTIFF'S OPP'N TO DFEENDANT WACHOVIA
                                                            MORTGAGE FSB'S MSJ
                                                            C08-04606 JW

1
2

**F.     Disputed Facts Exist That Show Wachovia Was Negligent in this
        Transaction.**

3      Mr. Reyes alleges that Wachovia acted negligently during his loan transaction.  Wachovia

4  claims that it owed no duty of care to Mr. Reyes.  However, Mr. Reyes's negligence claim against

5  Wachovia is based on vicarious liability for the acts of Premier and Candelario in regard to the

6  CTA.

7      Mr. Reyes has described the reasons why he believes a reasonable jury could find that

8  Premier was acting as Wachovia's agent during this transaction.  *See* Section A, *supra*.  A

9  principal is responsible for an agent's negligence or for the agent's willful failure to fulfill the

10  obligations of the principal.  Cal Civil Code § 2338.  "Respondeat superior creates an incentive

11  for principals to . . . structure work within the organization so as to reduce the incidence of

12  tortious conduct.  This incentive may reduce the incidence of tortious conduct more effectively

13  than doctrines that impose liability solely on an individual tortfeasor."  Restatement (Third) of

14  Agency § 2.04.  As described above, Premier and Candelario committed negligence and possibly

15  fraud in filling out and submitting Mr. Reyes's loan application, misrepresenting the terms of the

16  loan that Mr. Reyes was to receive, and failing to provide Mr. Reyes with copies of the loan

17  documents translated into Spanish.  If Mr. Reyes's had received translated loan documents the

18  value of Mr. Reyes's home would not be decreasing while the principal balance of his mortgage

19  steadily increases.  Reyes Decl. ¶ 21.  Moreover, the amount of Mr. Reyes's mortgage payments

20  has been steadily increasing, putting Mr. Reyes at risk of defaulting on his mortgage and

21  jeopardizing his interest in his property.  *Ibid.*

22      These issues – agency and negligence – are intensely factual.  They cannot be resolved on

23  summary judgment.

24
25

**G.     There Are Facts in Dispute with Regard to Plaintiff's UCL Claim
        Against Wachovia**

26      Wachovia is correct that the Court limited Mr. Reyes's California Business and

27  Professions Code Section 17200 claim to violation of the CTA.  [Doc. 45] (Order Granting in Part

28  and Denying in Part Motion to Dismiss at p. 8).  Mr. Reyes's claim that Wachovia engaged in

1    unfair and unlawful business practices in violation of Section 17200 is limited to Wachovia's

2    failure to provide translated loan documents to Mr. Reyes.  Under Section 17200, unfair

3    competition is defined as, "any unlawful, unfair, or fraudulent business act or practice. . . ."  Cal.

4    Bus. & Prof. Code § 17200.  "Because Business and Professions Code section 17200 is written in

5    the disjunctive, it establishes three varieties of unfair competition – acts or practices which are

6    unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1159,

7    97 Cal. Rptr. 2d 722 (2000) (quoting *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632,

8    647, 58 Cal. Rptr. 2d 89 (1996)).  Here, the failure of Wachovia to provide Mr. Reyes with

9    translated loan documents constitutes an unlawful and unfair business practice.

10   Further, Mr. Reyes has put forth facts that show he was injured as the result of

11   Wachovia's unfair competition.  Mr. Reyes has suffered significant injury within the meaning of

12   the UCL.  The value of Mr. Reyes's home has significantly decreased while the principal balance

13   of his mortgage steadily increases.  Reyes Decl. ¶ 21.  Moreover, of the ongoing, steady increase

14   in the amount of Mr. Reyes's mortgage payments puts him at constant risk of defaulting on his

15   mortgage and jeopardizing his interest in his property.  *Id.  See e.g., Sullivan v. Wash. Mut. Bank,*

16   *FA*, 2009 U.S. Dist. LEXIS 104074 * 12 (N.D. Cal. Oct. 23, 2009) (finding that a finance charge

17   improperly imposed constitutes both injury in fact and loss of money).  Moreover, the resulting

18   loss of equity and increase in payments are directly related to the failure of Wachovia and its

19   agents to provide Mr. Reyes with translated loan documents.  Accordingly, Wachovia's motion

20   for summary judgment on this cause of action should also be denied.

21

22   **V.    CONCLUSION**

23   As noted above, there are facts to support each and every one Mr. Reyes's claims of

24   wrongdoing and unlawful conduct by Wachovia and its agents.  Mr. Reyes believes that

25   Wachovia should be held accountable for its failure to provide adequate disclosures and for its

26   decision to pay unlawful kickbacks and fees.  Further, Wachovia should be held vicariously liable

27   for the acts of its agent, Premier.  These are intensely factual issues that cannot be resolved at this

28   stage in the litigation, and Wachovia's motion for summary judgment should be denied.

17                 PLAINTIFF'S OPP'N TO DFEENDANT WACHOVIA
                        MORTGAGE FSB'S MSJ
                        C08-04606 JW

1    Respectfully submitted,

2

3    Dated: March 1, 2010                          FAIR HOUSING LAW PROJECT

4

5                                                  ___/s/_____

6                                                       Annette D. Kirkham
                                                       Attorneys for Plaintiff
7                                                      BERNARDO REYES

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28